Robert B. Carey (SBN 011186)
John DeStefano (SBN 025440)
Tory Beardsley (SBN 031926)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile:  (602) 840-3012
Email:   rob@hbsslaw.com
            johnd@hbsslaw.com
            toryb@hbsslaw.com

Brett L. Slavicek (SBN 019306)
James Fucetola (SBN 029332)
Justin Henry (SBN 027711)
**THE SLAVICEK LAW FIRM**
5500 North 24th Street
Phoenix, Arizona 85016
Telephone: (602) 285-4435
Facsimile:  (602) 287-9184
Email:   brett@slaviceklaw.com
            james@slaviceklaw.com
            justin@slaviceklaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Christian Loughran | Case No. 23-cv-00108-PHX-DJH |
| Plaintiff, | **PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF THE SETTLEMENT CLASS** |
| v. | |
| MIC General Insurance Company, | |
| Defendant. | (Assigned to the Hon. Diane J. Humetewa) |

011064-28/3188697 V1

TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................ 1

II. PROCEDURAL HISTORY ................................................................ 1

    A.  Related Case History .............................................................. 1

    B.  Present Case History and Mediation ..................................... 4

III. SUMMARY OF SETTLEMENT TERMS ...................................... 6

    A.  The Settlement Class .............................................................. 6

    B.  The Settlement Consideration, Release of Claims, and
        Anticipated Class Recovery .................................................. 7

    C.  Attorneys' Fees and Costs, Incentive Award, and
        Administration Costs ............................................................. 9

    D.  Notice and Implementation of Settlement ........................... 12

    E.  Plan of Distribution .............................................................. 13

IV. ARGUMENT .................................................................................. 14

    A.  The Class should be certified for the purposes of settlement. ............ 14

        1.  The Settlement Class meets the requirements of Rule
            23(a)(1) .................................................................... 15

        2.  Questions of law and fact are common to the
            settlement class ........................................................ 19

        3.  Plaintiff's claim is typical of the Settlement Class's
            claims. ...................................................................... 20

        4.  Plaintiff and Class Counsel are adequate
            representatives .......................................................... 21

        5.  This case meets the predominance and superiority
            requirements of Rule 23(b). ..................................... 22

    B.  The proposed settlement should be preliminarily approved. ............... 30

        1.  The settlement is the result of arm's-length
            negotiations. ............................................................. 30

        2.  The settlement has no obvious deficiencies. ............. 32

MOTION FOR PRELIMINARY APPROVAL

3.    The proposed settlement does not grant preferential treatment to Plaintiff or segments of the Settlement Class. ................................................................. 33

4.    The settlement falls within the range of possible approval. ................................................................ 33

5.    The experience and views of counsel weigh in favor of preliminary approval. ........................................ 34

C.    The Proposed Class Notice and Plan for Dissemination Comply with Rule 23(e) ................................................. 35

D.    Proposed Schedule for Dissemination of Notice and Final Approval ......................................................................... 37

V.    CONCLUSION ................................................................... 37

MOTION FOR PRELIMINARY APPROVAL

# TABLE OF AUTHORITIES

Page(s)

Cases

*Aguayo v. Oldenkamp Trucking,*
No. CV F 04-6279 ASI LJO, 2005 WL 2436477 (E.D. Cal. Oct. 3,
2005) ........................................................................................................... 18

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
568 U.S. 455 (2013) .............................................................................. 22, 23

*Andreas-Moses v. Hartford Fire Ins. Co.,*
326 F.R.D. 309 (M.D. Fla. 2018) ..................................................... 7, 8, 27

*In re Anthem, Inc. Data Breach Litig.,*
327 F.R.D. 299 (N.D. Cal. 2018) ............................................................... 34

*In re Apple Inc. Device Performance Litig.,*
No. 5:18-MD-02827-EJD, 2021 WL 1022866 (N.D. Cal. Mar. 17, 2021) ................ 11

*Barone v. Safway Steel Prods., Inc.,*
No. CV-03-4258(FB), 2005 WL 2009882 (E.D.N.Y. Aug. 23, 2005)........................ 17

*Bd. of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.,*
269 F.R.D. 340 (S.D.N.Y. 2010) ............................................................... 27

*Beasley v. Blatt,*
No. 93 C 4978, 1994 WL 362185 (N.D. Ill. July 11, 1994)................................. 16, 17

*Beaulieu v. EQ Indus. Servs., Inc.,*
No. 5:06-CV-00400BR, 2009 WL 2208131 (E.D.N.C. July 22, 2009) ..................... 30

*Bee, Denning, Inc. v. Cap. All. Grp.,*
310 F.R.D. 614 (S.D. Cal. 2015) ............................................................... 27

*In re Bluetooth Headset Prods. Liability Litig.*
654 F.3d 935 (9th Cir. 2011) ..................................................................... 32

*Brink v. First Credit Res.,*
185 F.R.D. 567 (D. Ariz. 1999) ................................................................. 18

*Caroline C. By & Through Carter v. Johnson,*
174 F.R.D. 452 (D. Neb. 1996) ............................................................ 28, 29

*Churchill Vill., LLC v. Gen. Elec.,*
361 F.3d 566 (9th Cir. 2004) ..................................................................... 35

iii

011064-28/3188697 V1

*Cortez v. Nebraska Beef, Inc.*,
  266 F.R.D. 275 (D. Neb. 2010) ................................................................. 18

*Disability L. Ctr. v. Utah*,
  No. 2:15-CV-00645-RJS, 2016 WL 5396681 (D. Utah Sept. 27, 2016) .................... 18

*Est. of Gardner v. Cont'l Cas. Co.*,
  316 F.R.D. 57 (D. Conn. 2016) ................................................................. 27

*Franklin v. CSAA Gen. Ins. Co.*,
  255 Ariz. 409, 532 P.3d 1145 (2023) ................................................. 3, 4, 31

*Franklin v. CSAA Gen. Ins. Co.*,
  No. CV-22-00540-PHX-JJT, 2022 WL 16631090 (D. Ariz. Nov. 2,
  2022) ................................................................................................. 2, 3

*Fullmer v. A-1 Collection Agency, LLC*,
  No. 4:20-CV-00143-DN-PK, 2023 WL 4374007 (D. Utah July 6, 2023) ................. 28

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ................................................................. 23

*Julian v. Swift Transportation Co. Inc.*,
  No. CV-16-00576-PHX-ROS, 2020 WL 6063293 (D. Ariz. Oct. 14,
  2020) ................................................................................................. 12

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) ................................................................. 23

*Kleiner v. First Nat. Bank of Atlanta*,
  102 F.R.D. 754 (N.D. Ga. 1983) ........................................................... 12, 35

*Knapper v. Cox Commc'ns, Inc.*,
  329 F.R.D. 238 (D. Ariz. 2019) ................................................................. 15

*Koorndyk v. Midway Motor Sales, Inc.*,
  No. 1:04-CV-333, 2005 WL 8172493 (W.D. Mich. Mar. 29, 2005) ...................... 18

*McClure v. State Farm Life Ins. Co.*,
  341 F.R.D. 242 (D. Ariz. 2022) ........................................................... 20, 22

*McCluskey v. Trustees of Red Dot Corp. Emp. Stock Ownership Plan & Tr.*,
  268 F.R.D. 670 (W.D. Wash. 2010) ........................................................... 17

*Miller v. Trumbull Insurance Company*,
  Case No. CV-22-010505-PHX-JJT (D. Ariz.) ............................................. 30

iv

*Nat'l Ass'n of Radiation Survivors v. Walters*,
   111 F.R.D. 595 (N.D. Cal. 1986)............................................................... 15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)............................................................... 34

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir) ..................................................................... 23, 24

*Peters v. Cars To Go, Inc.*,
   184 F.R.D. 270 (W.D. Mich. 1998).......................................................... 17

*In re Pharm. Indus. Average Wholesale Price Litigation*,
   582 F.3d 156 (1st Cir. 2009)............................................................. 23, 24

*Pole v. Estenson Logistics, LLC*,
   No. CV 15-07196 DDP (EX), 2016 WL 4238635 (C.D. Cal. Aug. 10,
   2016) ...................................................................................................... 17

*Reid v. I.C. Sys. Inc.*,
   No. CV-12-02661-PHX-ROS, 2018 WL 11352039 (D. Ariz. July 27,
   2018), *aff'd*, 795 F. App'x 509 (9th Cir. 2019) ............................................ 34

*Robles v. Corp. Receivables, Inc.*,
   220 F.R.D. 306 (N.D. Ill. 2004)................................................................. 17

*Sonoma Sol LLLP v. Truck Ins. Exch.*,
   No. CV-20-00069-PHX-DJH, 2021 WL 5238711 (D. Ariz. Nov. 9,
   2021) .............................................................................................. 11, 33

*In re Theranos, Inc. Litigation*,
   Case No. 2:16-cv-2138-DGC (D. Ariz. Feb. 6, 2024)................................... 11

*Tinsley v. Faust*,
   No. CV-15-00185-PHX-ROS, 2020 WL 6048315 (D. Ariz. Oct. 13,
   2020) ...................................................................................................... 33

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016)........................................................................... 22, 23

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
   445 F. Supp. 3d 508 (N.D. Cal. 2020) ..................................................... 9, 10

*Whitaker v. Bennett L., PLLC*,
   No. 13-CV-3145-L NLS, 2014 WL 5454398 (S.D. Cal. Oct. 27, 2014) ................... 15

*Winkler v. DTE, Inc.*,
   205 F.R.D. 235 (D. Ariz. 2001) ......................................................... 28, 29

v

011064-28/3188697 V1

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) .................................................................. 19, 25, 26, 27

*Zwicky v. Diamond Resorts Inc.*,
    No. CV-20-02322-PHX-DJH, 2024 WL 1717553 (D. Ariz. Apr. 22,
    2024) ............................................................................................................. 10, 30

*Zwicky v. Diamond Resorts Mgmt. Inc.*,
    343 F.R.D. 101 (D. Ariz. 2022) .................................................................... *passim*

**Statutes**

A.R.S. § 20-259.01 ............................................................................................ *passim*

Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.* ........................................ 12

**Other Authorities**

Ariz. Admin. Code § 20-6-801 ........................................................................... 16

Arizona Rule of Civil Procedure 23 .................................................................... 5

Arizona Rules of Professional Conduct Rule 4.2 ................................................ 36

Federal Rule of Civil Procedure 23 .................................................................... *passim*

Federal Rule of Civil Procedure Rule 16 ............................................................ 29

Federal Rule of Civil Procedure Rule 30 ............................................................ 6

MOTION FOR PRELIMINARY APPROVAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

Plaintiff Christian Loughran respectfully moves the Court to: (1) certify the Settlement Class; (2) appoint Plaintiff Christian Loughran as the Class Representative for the Settlement Class; (3) appoint Robert Carey of Hagens Berman Sobol Shapiro, LLP as Lead Class Counsel for the Settlement Class;[1] (4) preliminarily approve the class action settlement between Plaintiff and Defendant MIC General Insurance Company ("Defendant" or "MIC"); and (5) direct notice to the Settlement Class. This Motion is based on Federal Rule of Civil Procedure 23, the supporting declarations, and the evidence and arguments presented in the briefs and at any hearing on this Motion to be set by the Court.

## II.    PROCEDURAL HISTORY

### A.    Related Case History

In October 2021, Judge Bolton ruled in favor of the insured plaintiffs in *Heaton v. Metropolitan Group Property & Casualty Co.*, holding that Arizona law required the insurer to stack uninsured motorist ("UM") and underinsured ("UIM") motorist coverages under multi-vehicle policies if the insurer fails to follow the requirements of A.R.S. § 20-259.01(H), in which case the insureds could collect the policy limits on each insured vehicle. No. CV-21-00442-PHX-SRB, 2021 WL 6805629, at *8 (D. Ariz. Oct. 19, 2021).

In April 2022, Class Counsel Hagens Berman filed *Franklin v. CSAA General Insurance Co.*, No. CV-22-00540-PHX-JJT, alleging the same theory against CSAA. *Franklin* was one of sixteen cases filed by Class Counsel Hagens Berman and the Slavicek Law Firm (collectively "Class Counsel") in the 2022-2024 timeframe alleging this theory of liability. Those parallel suits were filed against Allstate, Liberty Mutual,

---

[1] The Settlement Agreement is attached as Exhibit 1. This Motion is being filed with an unsigned Settlement Agreement to give Defendant additional time to secure the required signatures. Undersigned counsel certifies that the attached Exhibit 1 reflects the final agreement of the parties, and counsel will file the executed Agreement. Plaintiffs adopt and use the definitions in the Settlement Agreement in this Motion.

Safeco, Travelers, American Family, Amica, Hartford, Trumbull, Farmers Insurance, Nationwide, and the Defendant here, MIC.[2]

Class Counsel spent significant time and resources investigating the theory, legislative history, and industry information, as well as *Franklin* and the aforementioned related cases, all with the intention of coordinating litigation efforts across the cases. *See* Ex. 2, April 21, 2025 Declaration of Robert B. Carey ISO Mot. for Preliminary Approval ("Carey Decl.") ¶ 3. It should be noted that Defendant continues to dispute that *Franklin* applies to the arguments made by Defendant here, both as to merits and class certification, and also disputes that Class counsel's efforts would have any import in a litigation as opposed to settlement context

*Franklin* became a standard-bearer for the parallel cases because it begat a Supreme Court ruling affecting all the others. Citing the multiplicity of pending suits that presented the same UM/UIM stacking question, this court certified two questions to the Arizona Supreme Court in *Franklin*:

> (1) Does A.R.S. § 20-259.01 mandate that a single policy insuring multiple vehicles provides different underinsured motorist (UIM) coverages for each vehicle, or a single UIM coverage that applies to multiple vehicles?

> (2) Does A.R.S. § 20-259.01(B) bar an insured from receiving UIM coverage from the policy in an amount greater than the bodily injury liability limits of the policy?

---

[2] The following cases are pending in the District of Arizona: *Dale v. Travelers Prop. Cas. Ins. Co.*, Case No. CV-22-1659-PHX-SPL (D. Ariz) (consolidated with *Bode v. Travelers Prop. Cas. Ins. Co.*); *Franklin v. CSAA Gen. Ins. Co.*, No. CV-22-00540-PHX-JJT, 2022 WL 16631090, at *2–3 (D. Ariz. Nov. 2, 2022); *Doyle v. Pekin Ins. Co.*, Case No. CV-22-00638-PHX-JJT (D. Ariz.); *Moshier v. Safeco Ins. Co. of Am.*, Case No. CV-23-00225-PHX-DLR (D. Ariz.) (consolidated with *Haenfler v. Safeco Ins. Co. of Am.*); *Caballero v. Economy Preferred Insurance Co.*, Case No. CV-22-02023-PHX-MTL (D. Ariz.) (consolidated with *Luna v. Farmers Grp. Prop. and Cas. Ins. Co.*, *Creasman v. Farmers Cas. Ins. Co.*, and *Wilhelm v. Economy Premier Ins. Co.*); *Dorazio v. Allstate Fire and Cas. Ins. Co.*, Case No. CV-23-00017-PHX-JJT (D. Ariz.); *Lopez v. Liberty Mutual Personal Insurance Co.*, Case No. CV-23-00629-PHX-DLR (D. Ariz.); *Miller v. Trumbull Insurance Company*, Case No. CV-22-010505-PHX-JJT (D. Ariz.); *Hacker v. Am. Family Ins. Co.*, Case No. CV-22-01926-PHX-DLR (D. Ariz.); *Whitehead v. Amica Mutual Ins. Co.*, Case No. 2:22-cv-01978-PHX-DJH (D. Ariz.); and *Nutt v. Nationwide Ins. Co. of Am.*, Case No. CV-24-0228-PHX-ROS.

MOTION FOR PRELIMINARY APPROVAL

1

2   2022 WL 16631090, at *2–3 (D. Ariz. Nov. 2, 2022) ("This is the first-filed of eleven

3   known, present actions—four in the District Court and seven in Maricopa County

4   Superior Court—that turn on the resolution of the same question.").

5        On February 21, 2023, Class Counsel Hagens Berman filed Franklin's

6   Supplemental Brief Regarding Certified Questions with the Arizona Supreme Court.

7   Carey Decl. ¶ 4. The defendant in *Franklin* also filed a supplemental brief that same day.

8   *Id.* ¶ 5. In response to that briefing, four insurance companies and two insurance groups

9   filed a total of five amicus briefs in support of CSAA, totaling seventy-four pages of

10  briefing. *Id.* ¶ 6. Class Counsel Hagens Berman filed a combined response to all five

11  amicus briefs, which consisted of thirty-eight pages of additional briefing. *Id.* ¶ 7. Class

12  Counsel at the Slavicek Law Firm, on behalf of separate, multiple, represented plaintiffs,

13  filed a separate amicus brief. *Id.* ¶ 8. The Arizona Supreme Court held oral argument on

14  the certified questions on April 18, 2023. *Id.* ¶ 9. John DeStefano of Hagens Berman

15  argued those certified questions before the court. *Id.* ¶ 10.

16       On July 28, 2023, the Arizona Supreme Court answered the certified questions in

17  favor of plaintiff:

18           We hold that § 20-259.01 mandates that a single policy
19           insuring multiple vehicles provides different UIM coverages
             for each vehicle. Notwithstanding creative policy drafting
20           intended to evade statutory requirements—including technical
             definitions of coverages and extensive limitation of liability
21           clauses—insurers seeking to prevent insureds from stacking
             UIM coverages under a single, multi-vehicle policy must
22           employ subsection (H)'s sole prescribed method for limiting
             stacking. We also hold that § 20-259.01(B), by its plain
23           language and non-stacking function, does not bar an insured
24           from receiving UIM coverage from the policy in an amount
             greater than the bodily injury or death liability limits of the
25           policy.

26  *Franklin v. CSAA Gen. Ins. Co.*, 255 Ariz. 409, 532 P.3d 1145, 1146–47 (2023). The court

27  explained that although the text of A.R.S. § 20-259.01 is "ambiguous, . . . the statute's

28  history and purpose clearly indicate that multi-vehicle policies provide separate UIM

3

coverages for each vehicle." *Id.* at 1148. The court went even further than the certified questions to find that subsection (H) provides "the sole means by which insurers may limit UIM/UM stacking" and "to limit stacking under subsection (H), insurers must (1) expressly and plainly limit stacking in the policy and (2) satisfy the notice requirement informing the insured of their 'right to select one policy or coverage' either in the policy itself or in writing to the insured within thirty days after the insurer is notified of the accident." *Id.* at 1148, 1151 (quoting A.R.S. § 20-259.01(H)). The court concluded:

> In answering the certified questions, we hold that (1) § 20-259.01's text, history, and purpose provide that an insured covered by a multi-vehicle policy has necessarily "purchased" multiple UIM coverages for each vehicle under subsection (H); thus, rather than employing singular definitions of "coverage" in their policies, insurers must comply with the statute's requirements in order to prevent insureds from intra-policy stacking; and (2) § 20-259.01(B) does not limit UIM coverage.

*Id.* at 1153.

**B.    Present Case History and Mediation**

On December 19, 2022—while *Franklin* was pending but before this Court certified questions to the Arizona Supreme Court—Plaintiff Christian Loughran filed this case in Maricopa County Superior Court. Dkt. 1-3. Like the plaintiff in *Franklin*, Loughran's claims relate to stacking UM and UIM coverage. More specifically, Loughran alleges that he was injured in a collision on October 25, 2019, that his injuries led to medical expenses in excess of $34,000, and that the non-party at fault was underinsured. Dkt. 1-1, ("Compl.") ¶¶ 7-13. At the time of the collision, Loughran was an insured under an MIC policy insuring two vehicles, with UM coverage of $25,000 per person and an aggregate limit of $50,000 per collision. *Id.* ¶ 14-17. On April 28, 2021, Plaintiff submitted a claim to MIC for UIM benefits on the MIC policy. *Id.* ¶ 19. MIC paid Loughran $25,000—the policy limits on coverage under one of the vehicles—but did not pay any claims for coverage on the other vehicle. *Id.* ¶¶ 20-22. Loughran alleges that MIC failed to comply with the notice requirements of A.R.S. § 20-259.01(H). *Id.* ¶¶ 23-27.

1    Specifically, Loughran alleges that the limitation-of-liability policy language did not

2    inform him that coverage could not be stacked or of his right to select which coverage

3    would apply. *Id*. Loughran also alleges that within 30 days of receiving notice of the

4    collision, MIC did not provide him written notice of his right to select which coverage

5    would apply. *Id*. Loughran alleges because MIC did not inform him of his right to select

6    which coverage would apply, he was entitled to stack coverage for both vehicles. *Id*.

7        Loughran brought claims for breach of contract and breach of the implied covenant

8    of good faith and fair dealing, seeking declaratory relief, direct and consequential

9    damages, and punitive damages. Dkt. 1, Notice of Removal ¶ 6. Loughran also sought to

10   certify two classes of similarly situated individuals under Arizona Rule of Civil Procedure

11   23(b)(2) and (b)(3): (1) MIC's insureds with UM claims under an Arizona policy that

12   insured more than one vehicle who were paid the UM policy limits on one vehicle on the

13   policy, but where MIC either failed or refused to pay UM benefits on any other vehicles

14   on the policy; and (2) MIC's insureds with UIM claims under an Arizona policy that

15   insured more than one vehicle who were paid the UIM policy limits on one vehicle on the

16   policy, but where MIC either failed or refused to pay UIM benefits on any other vehicles

17   on the policy. Compl. ¶¶ 55-66.

18       On August 21, 2023, MIC filed its Answer to the Class Action Complaint. Dkt. 12.

19   In its Answer, MIC denied that it was required to pay Plaintiff or members of the putative

20   class stacked UM/UIM coverage, denied all other material allegations of Plaintiff's

21   Complaint, and raised numerous additional defenses to both the individual and putative

22   class claims. *Id*.

23       After holding a status conference, the Court stayed the matter pending the Arizona

24   Supreme Court's decision in *Franklin*. Dkt. 7. After being notified of the *Franklin*

25   decision, Dkt. 9, the Court lifted the stay, and the parties commenced discovery. Dkt. 10.

26       The parties engaged in significant discovery. In total, Plaintiff issued forty-four

27   requests for production, twenty interrogatories to MIC, and ten requests for admission.

28   Carey Decl. ¶ 11. As part of this discovery, MIC produced documents, including policy

5

forms, claims handling practices and procedures, internal correspondence regarding compliance, and claim file documents—which Plaintiff has reviewed. *Id.* ¶ 12. Plaintiff also issued a Rule 30(b)(6) deposition notice, for which the parties negotiated topics at length. *Id.* ¶ 13. Plaintiff also prepared and had served notices of deposition and subpoenas to depose other MIC employees and former employees including the claims handler and manager on Plaintiff's claim and MIC's former General Claims Manager – Large Loss. *Id.* ¶ 14. On the eve of the deposition for MIC's former General Claims Manager – Large Loss, the parties came to an agreement in principle to settle this action. *Id.* ¶ 15. Plaintiff's counsel and his damages expert reviewed and developed a damages model from this data. *Id.* ¶ 16.

Over the course of this litigation, the parties participated in multiple full day settlement negotiations regarding MIC and other, related insurance entities; the respected mediator, Michael N. Ungar (Ret.) assisted with these settlement discussions on March 8, June 11, and December 9 of 2024. *Id.* ¶ 17. Over the following weeks, the parties continued negotiating and on February 24, 2025, the parties were able to agree on the key terms of a settlement. *Id.* ¶ 18. The parties filed a Joint Notice of Settlement on March 7, 2025. Dkt. 47. The parties then agreed to the final Settlement Agreement, agreeing to settle the case for $900,000.00, attached as Exhibit 1.

### III.    SUMMARY OF SETTLEMENT TERMS

**A.    The Settlement Class**

The settlement encompasses the proposed "Settlement Class," which the parties agree includes:

> All persons insured under an MIC policy/policies issued in Arizona, that provided uninsured ("UM") or underinsured ("UIM") motorist coverage for more than one motor vehicle, who received a claim payment equal to the limit of liability for the UM or UIM benefits for only one vehicle; or who were one of multiple claimants where the aggregate total paid on such claims was equal to the aggregate limit of liability for the UM or UIM benefits for only one vehicle, as reflected in the

6

011064-28/3188697 V1

1
2

> agreed-upon list attached to the Settlement Agreement as
> Exhibit B.

3

Ex. 1, Settlement Agreement ¶ 25 & Ex. B thereto. Each "Settlement Class Member" is

4

identified on Exhibit B to the Settlement Agreement, which includes all known persons

5

who fall within the definition of the Settlement Class. *Id.* The parties agreed to a defined

6

universe for the Class. Carey Decl. ¶ 19. This eliminates the risk of any insured who is not

7

identified inadvertently having their claim released through this settlement. *Id.* ¶ 20. This

8

settlement resolves the claims of what is understood to be the complete universe of those

9

who could bring a stacking claim, so the release and payments due are limited to those

10

insureds known to the parties. *Id.*

11

**B.      The Settlement Consideration, Release of Claims, and Anticipated Class
Recovery**

12

The Settlement releases Defendant MIC from all claims for those Class Members

13

identified in Exhibit A, based on the facts alleged in the Complaint in exchange for a

14

common fund of $900,000.00, less any reduction for exclusions as described below (the

15

"Settlement Fund").[3] Settlement Agreement ¶¶ 35–40.

16

Class Counsel have developed substantial actuarial and statistical expertise through

17

prior cases involving the same legal theories and types of insurance claims. Carey Decl. ¶

18

21. In this case, however, the relatively small Class size made it impractical to apply the

19

full suite of statistical modeling tools developed by Class Counsel in a manner that would

20

yield statistically reliable or significant estimates. Instead, Class Counsel assessed the

21

fairness of the recovery by referencing the percentage of unpaid, available benefits

22

recovered in comparable cases where statistically significant modeling was feasible. *Id.* In

23

the two most comparable matters—*Hartford* and *Travelers*—Class Counsel and retained

24

experts employed rigorous methodologies, including Kaplan–Meier survival analysis,

25

variations of Weibull modeling, log-rank testing, curve-fitting, and maximum likelihood

26
27
28

---

[3] The claims released are all claims that were brought or could have been brought in the litigation, including but not limited to breach of contract and breach of the covenant of good faith and fair dealing.

MOTION FOR PRELIMINARY APPROVAL

1  estimation on censored claims data. *Id.* ¶ 22. Because those datasets were complete and

2  statistically robust, the resulting recovery percentages—35.1% in *Hartford* and 41.8% in

3  *Travelers*—serve as reliable benchmarks for assessing the fairness of recovery.[4] *Id.* This

4  benchmark approach is especially appropriate here because of the size of the class, which

5  makes referencing outcomes from comparable, fully modeled cases a competent and

6  equitable method for evaluating settlement fairness. *Id.*

7          Here, the $900,000 settlement represents approximately 36.36% of the Class's

8  unpaid, available insurance benefits—placing it squarely within the range of prior

9  outcomes achieved through statistically valid modeling. *Id.* ¶ 23. This alignment strongly

10  supports the conclusion that the proposed recovery is fair, reasonable, and adequate. As a

11  secondary cross-check, Class Counsel also determined that the settlement amount equals

12  approximately 2.15 times the Class's total "specials." *Id.* ¶ 24. For purposes of the

13  settlement of this action only, Defendant does not challenge this methodology, but

14  reserves all rights to assert any such challenge in any case involving an attempt to certify a

15  litigation class.

16          In making this settlement, Class Counsel considered the risks of going to trial

17  including the possibility that a trial could result in a smaller or zero recovery for the

18  Settlement Class, the time and resources that would be expended by both parties and the

19  Court, and the possibility of delay caused by any appeal if Plaintiff did prevail. And while

20  Plaintiff may have recovered more at trial, there is always a risk of losing at trial (even

21  with a meritorious case) for any number of reasons. *Id.* ¶ 25. There are also risks relating

22  to admissibility of evidence and class certification. *Id.* Awards of interest and punitive

23  damages are at the jury's discretion, as is the amount of compensatory damages awarded,

24  even if the proof is compelling. If Plaintiff prevails at trial, the delay and other financial

25  risks of an appeal are still considerable, and appeals are commonplace in insurance cases.

26

27

28     _____

    [4] Both *Hartford* and *Travelers* involved similar (higher) policy limits as this case,
    making them comparable. Carey Decl. ¶ 22.

8

*Id.* Finally, early resolution of this case avoids significant litigation costs and expert fees, greater attorneys' fees, and further loss of the time value of money on any recovery. *Id.*

**C.    Attorneys' Fees and Costs, Incentive Award, and Administration Costs**

Because this is a common fund settlement, the costs of notice and distribution, attorneys' fees and costs, and the service award for the Class Representative will be paid out of the Settlement Fund. Through April 15, 2025, Class Counsel has advanced costs of $1,185.95. *Id.* ¶ 26. Class Counsel will request a fee award of up to 30% of the total Settlement Fund. *Id.*

When awarding fees under a common fund in the Ninth Circuit, courts generally start with the 25% benchmark and adjust upward or downward depending on:

(1)    The extent to which class counsel achieved exceptional results for the class;

(2)    Whether the case was risky for class counsel;

(3)    Whether counsel's performance generated benefits beyond the cash fund;

(4)    The market rate for the particular field of law (in some circumstances);

(5)    The burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work); and

(6)    Whether the case was handled on a contingency basis.

*In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 519 (N.D. Cal. 2020) (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015), *aff'd*, 845 F. App'x 563 (9th Cir. 2021). Class Counsel's work and success in this case merits an upward adjustment of 5%, for a total fee of 30%. Private counsel entering into a contingent fee agreement for these types of cases (breach of contract and insurance bad faith in the context of an automobile injury) routinely request and receive (as expert testimony will show) a fee of 40% of the gross recovery achieved. Class Counsel's skill and effort, not only in this novel and risky case but also in *Franklin*, produced an extraordinary result. The *Franklin* decision confirmed that multiple coverages existed and could be stacked under a single insurance policy insuring multiple vehicles—the threshold issue in this case. Beyond this, Class Counsel's skill and expertise in developing the law, evidence, and analysis to secure class certification made this settlement possible. The

9

settlement permits every class member to receive a significant recovery without even knowing about the harm to their interests or having to retain private counsel and engage in a one-sided battle with their own insurer. Class Members will pay less than the established rate for a recovery devoid of the friction and unpleasantness that can accompany litigation. Class Counsel will more fully support their request, including detailing the relevant circumstances of the *Wells Fargo* factors, in their motion for attorneys' fees.

In moving for attorneys' fees, there will be a single fee request made in this case by Class Counsel and its team that worked on the case—there will not be multiple or competing fee requests that would require the assistance of a fee committee or special master. Moreover, the common fund payment is a discrete, negotiated cash benefit that is easily ascertained. Class Members will have ample information about the fee request and benefits produced by the efforts of counsel, as Plaintiff's proposed Notice includes the amount of fees and maximum amount of costs Class Counsel will seek, as well as the total recovery. Under Plaintiff's proposed schedule, the fee motion will be filed thirty days before the objection deadline and may be requested from Class Counsel for the Class Members to review. Given the known market for attorney's fees in relation to the recovery obtained for UM/UIM claims, class members have solid insights into what a reasonable fee is in the circumstances.

Given the nature of this case and the desire to be efficient while affording sufficient information to ascertain the appropriateness of a fee award, the optional procedures set forth in LRCiv 54.2(j) are seemingly unnecessary here. With the Court's permission, Plaintiff proposes to substantiate counsel's work for the class using task- and counsel-based time records as is typical for cross-check purposes in common fund cases. "[T]he district court need not inquire into the reasonableness of fees with the same level of scrutiny as when the amount of fees is litigated." *Zwicky v. Diamond Resorts Inc.*, No. CV-20-02322-PHX-DJH, 2024 WL 1717553, at *5 (D. Ariz. Apr. 22, 2024) (*quoting Wood v. Ionatron, Inc.*, 2024 U.S. Dist. LEXIS 67102, 2009 WL 10673479, at *5 (D. Ariz. Sept. 28, 2009) (*citing Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003)). The

MOTION FOR PRELIMINARY APPROVAL

1    purpose of the percentage-of-the-fund method is to reduce "the burden on the courts that a

2    complex lodestar calculation requires," and instead allows courts "to focus on showing

3    that a fund conferring benefits on a class was created through the efforts of plaintiffs'

4    counsel." *In re Apple Inc. Device Performance Litig.*, No. 5:18-MD-02827-EJD, 2021

5    WL 1022866, at *2 (N.D. Cal. Mar. 17, 2021) (citations omitted). As the percentage-of-

6    the-fund is appropriate in this case, and the Court only need perform a lodestar

7    crosscheck, detailed billing records would increase the time expended without improving

8    the ability to assess the proper percentage. Plaintiff will provide for each attorney who

9    worked on the case both summaries of the general tasks performed and the amount of time

10   each attorney billed, consistent with recent class settlements in this District and Circuit.[5]

11   Plaintiff will also provide a breakdown of all the task codes used in this case, identifying

12   the number of hours spent on each task code. This will allow the Court to easily and

13   accurately perform the lodestar cross check without burdening the Court or Class Counsel

14   with unnecessary time and expense. *Id.* at *2 (noting that the percentage-of-the-fund

15   method reduces "the burden on the courts that a complex lodestar calculation requires").

16         For a service award, Class Counsel will also seek an award of $10,000 for Plaintiff

17   Christian Loughran out of the Settlement Fund. "In the Ninth Circuit, an incentive award

18   of $5,000 is 'presumptively reasonable,'" and may be adjusted up or down depending on

19   effort. *Sonoma Sol LLLP v. Truck Ins. Exch.*, No. CV-20-00069-PHX-DJH, 2021 WL

20   5238711, at *6 (D. Ariz. Nov. 9, 2021) (citations omitted). Here, a slightly higher award is

21   reasonable. Loughran has been actively involved in this litigation and without his

22   willingness to come forward and prosecute the action, the Settlement Class Members

23   would have received nothing for their injuries. Plaintiff spent significant time assisting

24   Class Counsel in investigating and prosecuting this action. Carey Decl. ¶ 27. Plaintiff

25   assisted with drafting his factual allegations in the Complaint and responded to Requests

26   for Production, Requests for Admission, and Interrogatories served by MIC. *Id.* He also

27

28   ───────────────
     [5] *In re Theranos, Inc. Litigation*, Case No. 2:16-cv-2138-DGC (D. Ariz. Feb. 6, 2024)
     (approving fee award, including Hagens Berman's and Mr. Carey's fees).

MOTION FOR PRELIMINARY APPROVAL

011064-28/3188697 V1

1    made himself available for deposition and was prepared to testify when the parties came

2    to an agreement. *Id.* Given Mr. Loughran's efforts and the significant amount the Class

3    Members will receive, an award of $10,000 is reasonable. *See Julian v. Swift*

4    *Transportation Co. Inc.*, No. CV-16-00576-PHX-ROS, 2020 WL 6063293, at *3 (D. Ariz.

5    Oct. 14, 2020) (finding award of $15,000 reasonable where plaintiff traveled to Phoenix

6    for his deposition and in light of amount other class members would receive). Class

7    Counsel will more fully support this request in their motion for attorneys' fees.

8    **D.    Notice and Implementation of Settlement.**

9         Plaintiff has attached a proposed Settlement Class Notice and proposes the

10   following plan for the dissemination of that Notice. Ex. A, Proposed Notice. Plaintiff

11   proposes notifying the Settlement Class, which consists of nine Settlement Class

12   Members, via first-class U.S. mail. For Settlement Class Members whose addresses are

13   unavailable, notice shall be sent by email. Settlement Agreement ¶ 28. Plaintiff proposes

14   using Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Settlement

15   Administrator. *Id.* ¶ 21.

16        MIC will provide to Epiq and Class Counsel the names, addresses, email addresses,

17   and phone numbers for all members of the Settlement Class. *Id.* ¶¶ 41-42. Using that data,

18   Epiq will mail the Notice form to all settlement Class Members. *Id.* ¶ 42. With the Court's

19   approval, Class Counsel will also contact the Settlement Class Members to provide

20   information or answer questions that will aid "prospective class members in deciding

21   whether or not to join the class action." *Kleiner v. First Nat. Bank of Atlanta*, 102 F.R.D.

22   754, 769 (N.D. Ga. 1983). Additional details on the notice plan are set forth in Section C

23   below.

24        Notice is also required under the Class Action Fairness Act, 28 U.S.C. § 1711 *et*

25   *seq.* That notice will be provided to the appropriate state and federal officials no later than

26   ten days after the filing of this Motion. The cost of notice will be paid out of the

27   Settlement Fund, which amount is included in the estimated costs of administration above.

28

011064-28/3188697 V1

1

**E.    Plan of Distribution**

2       Plaintiff proposes sending checks to every member of the Settlement Class, with

3   the "Net Settlement Fund" (the Settlement Fund less attorneys' fees, costs, and any

4   incentive award) being distributed among the Settlement Class in accordance with the

5   allocated percentages as described in the Settlement Agreement. Settlement Agreement ¶

6   36. Class Counsel, in consultation with experts, will calculate an "Initial Allocation" for

7   each of Settlement Class Members. *Id.* ¶ 36. The Initial Allocation will be based on the

8   relative valuation of each Settlement Class Member's damages, an assessment of

9   economic losses, the statistical estimate taking into account the time of loss and limits of

10  the respective policies, as well as payments already received by the Settlement Class

11  Members. Carey Decl. ¶ 28.

12      After the deadline for Class Members to request exclusion has passed and the

13  exclusions are known, the Settlement Fund will be reduced for each Class Member who

14  has requested exclusion, by the percentages of their Initial allocation. Settlement

15  Agreement ¶ 36. Class Counsel will proportionally recalculate the percentage allocation of

16  the Net Settlement Fund for the remaining Settlement Class Members, to reflect the

17  reduction in the number of Settlement Class Members and reduced Settlement Fund. *Id.*

18  Class Counsel will attach that "Final Allocation" to the Motion for Final Approval, which

19  will represent each Settlement Class Member's share of the Net Settlement Fund. *Id.*

20      After the Settlement receives Final Approval, Epiq will mail checks via U.S. Mail

21  to each of the Settlement Class Members, in the proportions set forth in the Final

22  Allocation. *Id.* ¶ 37. If there are unclaimed funds, the parties agree that at Defendant's

23  election the funds shall either (1) be returned to Defendant, with the Settlement Class

24  Member treated as an opt out (except that any such exclusion will not be considered an

25  exclusion for the purposes of the termination provision in Paragraph 53 below); or (2) be

26  reallocated within the Settlement Fund to be applied toward costs of the Administrator. *Id.*

27  ¶ 38.

28

MOTION FOR PRELIMINARY APPROVAL

1

## IV.   ARGUMENT

"The Ninth Circuit has declared a strong judicial policy that favors settlement of class actions." *Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D. 101, 112 (D. Ariz. 2022) (citing cases). Where parties reach settlement before class certification, courts must approve both the fairness of the settlement and the "propriety of certification." *Id.* Here, the Settlement Class should be certified under Federal Rule of Civil Procedure 23(b)(3) and the settlement is "fair, reasonable, and adequate" under Rule 23(e). It should be noted that while Defendant supports this settlement, it contends that it has numerous meritorious defenses to the substance of Plaintiff's claims and also that this case would not have been suitable as a litigation class, and reserves all its rights and arguments in these regards should this Settlement not eventuate.

## A.    The Class should be certified for the purposes of settlement.

"A class action will only be certified if it meets the four prerequisites identified in Federal Rule of Civil Procedure ("Rule") 23(a) and additionally fits within one of the three subdivisions of Rule 23(b)." *Zwicky*, 343 F.R.D. at 113. Rule 23(a) requires the Court to examine whether: (1) the class is so numerous that joinder of all members is impracticable,[6] (2) there are questions of law and fact common to the class, (3) the claims and defenses of the representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately protect the class. Fed. R. Civ. P. 23(a)(1)-(4). Rule 23(b)(3) requires the Court to determine whether "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods." Fed. R. Civ. P. 23(b)(3). Plaintiff can show that the Settlement Class meets the requirements of Rules 23(a) and (b)(3) and should be certified for the purpose of settlement.

---

[6] Consistent with Court's Order in *Whitehead v. Amica Mutual Insurance Company* seeking more detail pertaining to the numerosity and superiority requirements of Rule 23, Plaintiff addresses those prongs in detail below. Order, *Whitehead*, No. 2:22-cv-01978-DJH, Dkt. 39 (D. Ariz. Mar. 20, 2025). In particular, Plaintiff provides insight into why joinder of all Settlement Class Members would be impracticable here and why a class is superior.

14

1

### 1.    The Settlement Class meets the requirements of Rule 23(a)(1).

"Rule 23(a)(1) is an impracticability-of-joinder rule, not a strict numerosity rule. It is based on considerations of due process, judicial economy, and the ability of claimants to institute suits." 1 Newberg and Rubenstein on Class Actions § 3:11 (6th ed.). "The term 'impracticable' is not synonymous with impossible." *Whitaker v. Bennett L., PLLC*, No. 13-CV-3145-L NLS, 2014 WL 5454398, at *4 (S.D. Cal. Oct. 27, 2014). Numerosity is not "tied to any fixed numerical threshold." *Zwicky*, 343 F.R.D. at 114. "[N]umerosity is met when general knowledge and common sense indicate that joinder would be impracticable." *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 241 (D. Ariz. 2019).

This case meets the numerosity requirement because joinder, or individual suits, is impracticable. "[I]n determining whether joinder is impracticable in a particular case, the court should consider not only the class size but other factors as well, including the geographical diversity of class members, the ability of individual members to institute separate suits, and the nature of the underlying action and the relief sought." *Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986). While there are only nine Class Members, the proposed Settlement Class meets the numerosity requirement because Class Members unable or unlikely to institute separate suits, there is some geographic diversity, and the Court should err in favor certifying the Settlement Class to promote judicial economy and due process.[7] Here, Class Members are unaware of the existence of their claims. And, as MIC maintains that it is not liable for the damages sought herein, they are unlikely to become aware of their claims but for this settlement. Even if they were aware, because the claims involve legal rights not readily identifiable by individual insureds. Class treatment is not only the most efficient mechanism but the only realistic way to ensure disclosure of rights and contract expectancy.

---

[7] As Plaintiff does not seek to certify a Rule 23(b)(2) class, injunctive or declaratory relief has no bearing on numerosity.

15

1

### a. Individual Class Members are unable, and unlikely, to file individual lawsuits.

Whether class members are able to file individual suits weighs in favor of certification. Here, the Class Members are likely unaware of their claims or incapable of fully understanding the complex claim they possess, which demonstrates they are unable, and therefore unlikely, to file individual claims. Defendant maintains that it has numerous meritorious defenses to Plaintiff's individual claims and the Class Members's claims, and would vigorously assert all these defenses if the Settlement is not approved. Each of the Class Members already made a claim to MIC for their uninsured/underinsured motorist ("UM/UIM") claim and were paid what they were told was the maximum amount under the policy.[8] Many were likely represented by counsel as well, so they would have no reason to suspect that their lawyer did not recover the full policy limits. Class Members would not be aware of the Arizona Supreme Court's decision in *Franklin v. CSAA*, which is the main legal support for Plaintiff's claim that Amica was improperly paying UM/UIM stacking claims under A.R.S. § 20-259.01. And virtually no Class Member would apprehend the alleged violation or concomitant statutory failure to accurately disclose the available benefits. *See* Ariz. Admin. Code § 20-6-801 ("No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented.").

Courts routinely find that individual suits are unlikely where the class members are unaware of their rights and certify smaller classes.[9] In *Beasley*, the court certified a small class where "many consumers may be unaware of their rights under the statute and, thus, less likely to bring their own claims" and "it seems impractical to litigate the form letter's

---

[8] Class Counsel has brought multiple cases against different insurance companies, alleging the claims here. Three of those cases have certified a settlement class and sent notice to the class members. Carey Decl. ¶ 33. While Class Counsel have not spoken to any of the Class Members in this case, they have spoken to dozens of class members in those cases. *Id* ¶ 34. None of those class members were aware of their claims, many being previously represented by other attorneys. *Id.*

[9] Section IV.5.b(2). below addresses how the absence of pending litigation demonstrates superiority. It similarly weighs in favor of numerosity, as the lack of other litigation demonstrates that Class Members are unaware of their rights.

MOTION FOR PRELIMINARY APPROVAL

1  legality more than once." *Beasley*, 1994 WL 362185, at *2. That same court similarly

2  certified another small class where "the class comprises a number of individuals who are

3  likely to be unaware of their rights." *Robles v. Corp. Receivables, Inc.*, 220 F.R.D. 306,

4  315 (N.D. Ill. 2004). Other courts are in accord. *See Barone v. Safway Steel Prods., Inc.*,

5  No. CV-03-4258(FB), 2005 WL 2009882, at *3 (E.D.N.Y. Aug. 23, 2005) (certifying

6  class of fifty where many may be "unaware of their statutory rights"); *Peters v. Cars To*

7  *Go, Inc.*, 184 F.R.D. 270, 280 (W.D. Mich. 1998) (finding where "members of the

8  proposed class are likely unaware of their rights . . . the class members will probably not

9  file suit to protect their rights"). Here numerosity should be found because the Class

10  Members are unaware of their rights, and it would be impractical to litigate the payment

11  of stacked benefits under identical insurance policies.

12      **b.**  **The Class Members are geographically diverse.**

13    The geographic diversity of the Class Members also weighs slightly in favor of

14  finding joinder impracticable. The Class Members are spread across two counties in

15  Arizona—Maricopa and Pinal Counties.[10] Courts across the country have found

16  geographical diversity in similar situations, weighing against joinder. In considering

17  whether "a seventeen-member class would meet the numerosity requirement," the Central

18  District of California found geographic diversity where class members were located

19  across California in nine different cities. *Pole v. Estenson Logistics, LLC*, No. CV 15-

20  07196 DDP (EX), 2016 WL 4238635, at *5 (C.D. Cal. Aug. 10, 2016). Where "three of

21  the twenty-seven known class members live out of [the] district" the Western District of

22  Washington found "that having three of the twenty-seven potential plaintiffs so widely

23  dispersed, as far away as Alabama, favors class certification." *McCluskey v. Trustees of*

24  *Red Dot Corp. Emp. Stock Ownership Plan & Tr.*, 268 F.R.D. 670, 675 (W.D. Wash.

25  2010). And the Northern District of Illinois certified a twenty-five-member class where

26  most of the class members lived in different cities, and a few resided out of state. *Beasley*

27

28    [10] MIC provided the city and state each Class Member resides in. Carey Decl. ¶ 35. The Class Members live in five different cities, with most Class Members in Maricopa County and one in Pinal County. *Id.*

1  *v. Blatt*, No. 93 C 4978, 1994 WL 362185, at *2 (N.D. Ill. July 11, 1994). This District has

2  similarly found that a class "with addresses in Arizona is sufficiently large to render

3  joinder impracticable, ***particularly because class members are located throughout the***

4  ***state***." *Brink v. First Credit Res.*, 185 F.R.D. 567, 570 (D. Ariz. 1999) (emphasis added);

5  *see also Disability L. Ctr. v. Utah*, No. 2:15-CV-00645-RJS, 2016 WL 5396681, at *4 (D.

6  Utah Sept. 27, 2016) (finding geographic diversity for small class "dispersed throughout

7  Utah"); *Aguayo v. Oldenkamp Trucking*, No. CV F 04-6279 ASI LJO, 2005 WL 2436477,

8  at *12 (E.D. Cal. Oct. 3, 2005) ("Joinder of the [34 class members], may be possible, but

9  it is most likely impracticable" where they are spread across the state). This factor weighs

10 in favor of finding numerosity.

11          **c.      The Court should err in favor of certification.**

12         "When the impracticability of joinder is a close call, some courts err in favor of

13 certification because a court always has the option to decertify the class if it is later found

14 that the class does not in fact meet the numerosity requirement." 1 Newberg and

15 Rubenstein on Class Actions § 3:12 (6th ed.). The Eleventh Circuit specifically has found

16 that "where the numerosity question is a close one, a balance should be struck in favor of

17 a finding of numerosity, since the court has the option to decertify pursuant to Rule

18 23(c)(1)." Other courts have adopted this approach. *See Cortez v. Nebraska Beef, Inc.*, 266

19 F.R.D. 275, 289 (D. Neb. 2010)  ("where the numerosity question is a close one, a balance

20 should be struck in favor of a finding of numerosity, since the court has the option to

21 decertify pursuant to Rule 23(c)(1)"); *Koorndyk v. Midway Motor Sales, Inc.*, No. 1:04-

22 CV-333, 2005 WL 8172493, at *6 (W.D. Mich. Mar. 29, 2005) (same).

23         Any approval of the Settlement Class in this case is only preliminary, not final.

24 This Court may later decertify the Settlement Class and decide not to grant final approval

25 if it turns out that joinder or individual litigation is likely. *See* Fed. R. Civ. P. 23(c)(1)(C)

26 ("An order that grants or denies class certification may be altered or amended before final

27 judgment."). Because this is a Class where MIC has direct contact information for every

28 Class Member, every Class Member will receive a copy of the Notice in the mail and be

18

011064-28/3188697 V1

1    put on notice of their rights. Class Counsel will also be able to reach out to every Class

2    Member to ensure they received the Notice and understand their rights. Class Members

3    will then have the option to opt out or object to the Settlement. If all or virtually all Class

4    Members stay in the Settlement Class, which is likely given the reaction of class members

5    in similar cases,[11] that will provide the Court assurance that the Class Members do not

6    want to proceed with individual litigation. It will also serve due process because every

7    Class Member will be informed of their rights, including the existence of this claim. This

8    weighs in favor of certification.

9        **2.    Questions of law and fact are common to the settlement class.**

10       Rule 23(a)(2) requires the existence of "questions of law or fact common to the

11   class." Fed. R. Civ. P. 23(a)(2). "Commonality exists where class members' 'situations

12   share a common issue of law or fact and are sufficiently parallel to insure a vigorous and

13   full presentation of all claims for relief.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617

14   F.3d 1168, 1172 (9th Cir. 2010) (citation omitted). "Because the Ninth Circuit construes

15   commonality liberally, it is not necessary that all questions of law and fact be common.

16   The commonality requirement is met when the common questions it has raised are apt to

17   drive the resolution of the litigation." *Zwicky*, 343 F.R.D. at 114 (internal quotation,

18   alteration, and citations omitted).

19       Commonality is satisfied here. Similar factual allegations apply to each of the

20   proposed Settlement Class Members. Plaintiff alleges that all Settlement Class Members

21   purchased a MIC policy in Arizona that included multi-vehicle UM/UIM coverage and the

22   same or substantially same limitation-of-liability policy language. Plaintiff further alleges

23   that each Settlement Class Member requested UM/UIM coverage from MIC but only

24   received the policy limit for one covered vehicle. Plaintiff also alleges that MIC did not

25   provide the required notice under A.R.S. § 20-259.01(H) to the Settlement Class

26   Members, either through the policy language or by separate written notice.

27

28       [11] Class Counsel has sent notice to approximately 1,000 class members in three similar lawsuits. Carey Decl. ¶ 33. To date, no class member has objected or opted out. *Id.*

19

011064-28/3188697 V1

1     Plaintiff's causes of action are also identical for the Settlement Class. Plaintiff's

2  claims for breach of contract and breach of the covenant of good faith and fair dealing all

3  ask the same question: Whether MIC breached its contracts with the Settlement Class

4  when it failed to provide the Settlement Class Members with stacked coverage, after not

5  providing the notice required by A.R.S. § 20-259(H) either in the policy or by separate

6  letter. *See McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242, 250 (D. Ariz. 2022)

7  ("Plaintiff has satisfied the commonality requirement because each claim is based on a

8  form contract and a uniform course of conduct towards each policyholder by State

9  Farm."). And, as the insurance policies were all issued in Arizona, Arizona law controls

10  and applies to each member of the Settlement Class. Commonality is met in this case.

11          **3.      Plaintiff's claim is typical of the Settlement Class's claims.**

12     "Typicality requires that the named plaintiff have claims 'reasonably coextensive

13  with those of absent class members,' but the claims do not have to be 'substantially

14  identical.'" *Zwicky*, 343 F.R.D. at 115 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

15  1020 (9th Cir. 1998)). "The test for typicality 'is whether other members have the same or

16  similar injury, whether the action is based on conduct, which is not unique to the named

17  plaintiffs, and whether other class members have been injured by the same course of

18  conduct.'" *Id.* (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

19     Plaintiff has no individual claims that differ from the Settlement Class's claims.

20  Plaintiff had a MIC policy that provided UM/UIM coverage on more than one vehicle, he

21  requested UIM coverage from MIC that exceeded the limit of UIM coverage on one

22  vehicle, he alleges MIC did not provide him the required statutory notice to prevent

23  stacking and allow him to choose UIM coverage, and he only received payment in the

24  amount of the single (one-vehicle) UIM limit. Like Plaintiff, all Settlement Class

25  Members had a MIC policy that provided UM/UIM coverage for more than one vehicle,

26  they requested UM/UIM coverage from MIC, MIC allegedly did not provide them the

27  required statutory notice to prevent stacking and allow them to choose their UM/UIM

28  coverage, and they only received UM/UIM coverage for one vehicle. Plaintiff's claims all

MOTION FOR PRELIMINARY APPROVAL

1   sound in contract and bad faith, alleging that MIC breached its contractual obligations and

2   the duty of good faith by not paying for additional UM/UIM coverage. The Settlement

3   Class Members have breach of contract and bad faith claims that are identical to those of

4   Plaintiff. Plaintiff meets the typicality requirement.

5           **4.      Plaintiff and Class Counsel are adequate representatives.**

6           "To resolve the question of legal adequacy, the Court must answer two questions:

7   (1) do the named plaintiff and her counsel have any conflicts of interest with other class

8   members and (2) has the named plaintiff and her counsel vigorously prosecuted the action

9   on behalf of the class?" *Zwicky*, 343 F.R.D. at 116 (citing *Hanlon*, 150 F.3d at 1020).

10  "This adequacy inquiry considers a number of factors, including 'the qualifications of

11  counsel for the representatives, an absence of antagonism, a sharing of interests between

12  representatives and absentees, and the unlikelihood that the suit is collusive.'" *Id.* (citing

13  *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992)). "The adequacy-of-

14  representation requirement tend[s] to merge with the commonality and typicality criteria

15  of Rule 23(a)." *Id.* (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 626 n.20

16  (1997)).

17          There are no conflicts of interest between Plaintiff and Class Counsel and the

18  Settlement Class. As shown above, commonality and typicality are met, showing there are

19  no conflicts between Plaintiff and the Settlement Class. *See Zwicky*, 343 F.R.D. at 116

20  (finding no conflict where commonality and typicality are met). And Class Counsel has no

21  conflict with the Settlement Class, having litigated this case and related cases, including

22  *Franklin*, which yielded a favorable decision for Arizona insureds.

23          "The second prong of the adequacy inquiry examines the vigor with which

24  Plaintiffs and their counsel have pursued the common claims*." Zwicky*, 343 F.R.D. at 116.

25  Here, Plaintiff has fulfilled his duties as a class representative, assisting with the litigation

26  when asked. Hagens Berman Sobol Shapiro LLP is adequate counsel. Hagens Berman has

27  extensive experience in complex and class-action litigation, including insurance litigation.

28  Ex. 3, Hagens Berman Firm Resume. And it has adequately litigated this case, getting a

favorable decision in *Franklin*, which has benefited the Settlement Class Members here. Adequacy is met.

### 5.   This case meets the predominance and superiority requirements of Rule 23(b).

A class action may be maintained under Rule 23(b)(3) if (1) "the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Zwicky*, 343 F.R.D. at 117 (quoting Fed. R. Civ. P. 23(b)(3)). This case meets both the predominance and superiority requirements needed for class certification.

### a.   Common questions predominate in this case.

"Because Rule 23(a)(3) already considers commonality, the focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues." *Zwicky*, 343 F.R.D. at 117. "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)); *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 467 (2013) (when an issue in the case can be proven through evidence common to the class, it is a "'common questio[n]' for purposes of Rule 23(b)(3)"). Here individual issues do not outweigh common issues. As established above, the facts and legal issues are common to the class. Plaintiff contends liability can be established by the policy forms and standardized letters; and where there is a form insurance contract with common treatment of the class members, predominance is typically met. *See McClure*, 341 F.R.D. at 252 (finding predominance in breach-of-contract claim against insurance company, noting a "claim for breach of a standard form contract or company policy often may be suitable for class-wide treatment" (quoting

1    *Garza v. Gama*, 379 P.3d 1004, 1007 (Ariz. Ct. App. 2016))). Thus, the only question is

2    whether there any individual issues outweigh these common issues.

3        As *Amgen* correctly notes, when the proof is common, individualized issues do not

4    predominate because the result is simply that, if the class fails in its proof, its claim will

5    fail and "there will be no remaining individual questions to adjudicate." *Amgen*, 568 U.S.

6    at 469. Here, if the case was litigated, Plaintiff contends liability and causation would be

7    established by each class member using the same evidence, rendering it suitable for class

8    treatment and leaving the merits determination for the factfinder.

9        Moreover, "[w]hen 'one or more of the central issues in the action are common to

10   the class and can be said to predominate, the action may be considered proper under Rule

11   23(b)(3) even though other important matters will have to be tried separately, such as

12   damages or some affirmative defenses peculiar to some individual class members.'" *Tyson*

13   *Foods,* 577 U.S. at 453 (quoting 7AA C. Wright, A. Miller, & M. Kane, *Federal Practice*

14   *and Procedure* § 1778 at 123–24 (3d ed. 2005)). In settlement classes, whether a class is

15   sufficiently cohesive to satisfy predominance "is informed by whether certification is for

16   litigation or settlement." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th

17   Cir. 2019). The result is that, in settlements such as this, "the district court need not

18   consider trial manageability issues." *Id.* at 563.

19       While each Settlement Class Member has varying damages, those issues do not

20   create a predominance problem. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee*

21   *Foods LLC*, 31 F.4th 651, 668–69 (9th Cir) ("[W]e have held that a district court is not

22   precluded from certifying a class even if plaintiffs may have to prove individualized

23   damages at trial, a conclusion implicitly based on the determination that such

24   individualized issues do not predominate over common ones."); *Just Film, Inc. v. Buono*,

25   847 F.3d 1108, 1121 (9th Cir. 2017) ("That some individualized calculations may be

26   necessary does not defeat finding predominance."). Damages can still be calculated on a

27   classwide basis using a set formula or statistical estimations, as was done here. *In re*

28   *Pharm. Indus. Average Wholesale Price Litigation*, 582 F.3d 156, 197–98 (1st Cir. 2009).

23

MOTION FOR PRELIMINARY APPROVAL

1   Indeed, "the use of aggregate damages calculations is well established in federal court and

2   implied by the very existence of the class action mechanism itself." *Id.* at 197.

3       For purposes of determining the aggregate award, Class Counsel considered a

4   variety of methodologies to estimate the payments MIC would have paid had appropriate

5   available-benefits limits been applied. Carey Decl. ¶ 29. Class Counsel ultimately used the

6   statistical analysis and expertise performed in similar cases, with larger sample sizes, to

7   determine aggregate damages, and performed a cross-check looking at specials. *Id.* ¶¶ 21–

8   24.

9       To distribute the aggregate recovery, Class Counsel will determine individual

10   allocations for each Settlement Class Member. *Id.* ¶ 28. The distribution approach, at a

11   minimum and to account for the length of deprivation of funds, considers the date of the

12   claim, the amount of UM/UIM coverage available, and the relative value of the claim. *Id.*

13   ¶ 30. The Class is entitled to prove its aggregate damages using statistical estimates, and

14   then allocate a share of the recovery to each class member using any reasonable method to

15   determine individual allocations. *See Olean Wholesale Grocery Coop., Inc.*, 31 F.4th at

16   668–69 (individualized damages do not create predominance issue); *In re Pharm. Indus.*

17   *Average Wholesale Price Litigation*, 582 F.3d at 197 (approving use of aggregate

18   damages in class actions). Here, the Class can rely on preexisting data that ascertain

19   relative exposures for each claim, and also a methodology based on date of loss and

20   amount of coverage. Predominance is met in this case. As noted above, Defendant does

21   not concede this methodology would be appropriate in connection with attempting to

22   certify a litigation class, or otherwise on the merits in this case, and indeed would

23   vigorously dispute the efficacy of this methodology in this and any other case in the

24   litigation context, it does not contest that this methodology can be utilized only in

25   connection with the instant settlement class.

26

27

28

24

MOTION FOR PRELIMINARY APPROVAL

1

2

**b.   Litigating this case as a class action is superior to individual adjudications.**

This case also meets the requirement that a class action be "superior" to individual adjudications. "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175 (citation omitted). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Zwicky*, 343 F.R.D. at 118 (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). "[T]the superiority determination involves, either explicitly or implicitly, a comparison of the class action—representative litigation—as a procedural mechanism to available alternatives. These alternatives include multiple individual actions, joinder of claims, the use of test cases, and administrative proceedings, among others." 2 Newberg and Rubenstein on Class Actions § 4:64 (6th ed.).

Three of the four factors enumerated in Rule 23(b)(3)—Class Members' interest in controlling the litigation, the nature and extent of other litigation, and the desirability of concentrating the litigation in a particular forum—apply to class settlements. These factors partially overlap with the numerosity analysis and similarly demonstrate that superiority is met.

**(1)   The Class Members have not shown an interest in controlling the litigation.**

The first "prong of the superiority requirement directs courts to determine whether individuals really would want to control their own litigation in the given situation or whether that ideal is more fiction than reality." 2 Newberg and Rubenstein on Class Actions § 4:69 (6th ed.). As touched on in Section IV.A.1.a above, Class Members cannot have an interest in controlling litigation they are unaware of. Newberg on Class Actions identifies two additional reasons "why individuals may have little interest in pursuing litigation themselves. First, their claims may be so closely related to the claims of others that litigation by others will achieve their ends without the need for their involvement. Second, their claims may be so small that it would be a waste of their time and/or

1   resources to litigate individually." *Id.* All three factors demonstrate that Class Members

2   have not shown an interest in controlling the litigation.

3       First, it is highly unlikely that the Class Members are aware of the existence of

4   their claims. And, as Defendant continues to deny liability on the merits, it is even less

5   likely that they will ever become aware without the notice sought herein. The superiority

6   requirement, specifically, is designed "to assure that the class action is the most efficient

7   and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am.,*

8   *LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). A class action is the most

9   efficient and effective way of resolving the Class Members' claim when they are unaware

10  of the existence of the claim.

11      Second, the claims of the Class Members are so closely related that it is unlikely

12  Class Members would want direct involvement. Each of the Class Members submitted a

13  UM/UIM claim with MIC, each was paid the maximum UM/UIM limits for one vehicle,

14  and Plaintiff claims that each of them was entitled to stack their UM/UIM insurance

15  coverage for all insured vehicles. The only difference between the Class Members' claims

16  is the number of vehicles insured, the amount of coverage, and the amount of medicals

17  and lost wages. But Plaintiff's damages methodology accounts for all those factors and

18  splits the common fund based on each Class Member's insurance coverage, number of

19  insured vehicles, and medicals and lost wages. Additionally, this is a case involving

20  purely economic injury. Class members generally are found to want to control their own

21  litigation in "personal injury cases as opposed to those involving purely economic

22  damages." 2 Newberg and Rubenstein on Class Actions § 4:69 (6th ed.) (citing cases).

23      Third, the size of most claims also do not justify individual litigation. While the

24  damages will vary among the Class Members, several of the Class Members will not have

25  significant damages justifying individual litigation. Carey Decl. ¶ 31. While these

26  recoveries are larger than most class recoveries, it does not make individual litigation

27  feasible or desirable for most of the Class Members. Most would likely end up paying a

28  higher percentage of their recovery to an attorney as well, as the standard contingent fee in

MOTION FOR PRELIMINARY APPROVAL

these types of cases is 40%, and Class Counsel is only requesting 30%. Likewise, if every Class Member were litigate their claim individually, rather than sharing costs across the Class, they would incur individual costs associated with filing, hiring court reporters, hiring separate experts to opine on bad faith, calculate damages, testify at deposition and at trial, and rebut Defendant's experts—costs that easily reach tens of thousands of dollars and exceed the value of their claims. Put simply, the damages available to the majority of the Class Members are not significant enough to litigate against a large insurance company with more resources. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."); *Est. of Gardner v. Cont'l Cas. Co.*, 316 F.R.D. 57, 76–77 (D. Conn. 2016) (finding superiority where damages were not small, but not significant enough relative to the cost of litigation); *see also Bee, Denning, Inc. v. Cap. All. Grp.*, 310 F.R.D. 614, 629 (S.D. Cal. 2015) ("This disparity between litigation costs and prospective recovery provides the most compelling rationale for finding superiority in a class action."). It is unlikely most of the Class Members would want to be subjected to the rigors of individual litigation, including participating in extensive discovery and motion practice, a possible trial, and likely delayed recovery. And while a few of the Class Members have claims that could justify individual litigation, that does not mean that the class action mechanism is unwarranted or that predominance is not met. Even for larger claims, predominance is met to avoid inconsistent outcomes and for judicial efficiency. 2 Newberg and Rubenstein on Class Actions § 4:67 (6th ed.) (citing cases); *see also Andreas-Moses v. Hartford Fire Ins. Co.*, 326 F.R.D. 309, 319–20 (M.D. Fla. 2018) (even where individual incentive of larger claim exists, multiple litigations on the same topic is inefficient); *Bd. of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 355 (S.D.N.Y. 2010) ("[T]he existence of large individual claims that are sufficient for individual suits is no bar to a class when the advantages of unitary adjudication exist to determine the defendant's

MOTION FOR PRELIMINARY APPROVAL

liability."). Here it would be inefficient for the courts to adjudicate nine separate litigations over the same insurance policy and UM/UIM stacking practices.

### (2)    There is no other pending litigation.

Class Counsel is not aware of any such litigation and MIC has not identified any other pending litigation against it related to how it stacked UM/UIM insurance in Arizona. "Thus, this subfactor weighs in favor of class certification because there appears to be no risk of multiple adjudications and no indication that absent class members would prefer individual actions." *Winkler v. DTE, Inc.*, 205 F.R.D. 235, 245 (D. Ariz. 2001). Courts in other districts have similarly found predominance where there are no other lawsuits pending, finding that the lack of other suits indicates that the class members are unwilling to pursue a claim or unaware of the claim. *See Fullmer v. A-1 Collection Agency, LLC*, No. 4:20-CV-00143-DN-PK, 2023 WL 4374007, at *10 (D. Utah July 6, 2023) ("No other litigation concerning Defendants' collection practices in Utah has been identified by the parties. This suggests that the proposed class members may be unaware of their rights and Defendants' alleged conduct in the state debt collection lawsuits, or that they are unable or unwilling to pursue relief individually."); *Caroline C. By & Through Carter v. Johnson*, 174 F.R.D. 452, 463 (D. Neb. 1996) ("Potential lack of knowledge and sophistication of the class members place them in a poor position to seek legal redress individually."). The fact that no other Class Member has brought a case indicates that Class Members are either unaware or unwilling to file a separate action.

### (3)    Concentrating the litigation in this forum is preferable.

The desirability of concentrating the litigation in a particular forum embodies two independent concerns: (1) aggregating the claims in one forum; and (2) whether a particular forum is appropriate. 2 Newberg and Rubenstein on Class Actions § 4:71 (6th ed.) (citing Fed. R. Civ. P. 23 Advisory Committee Notes). "The first issue focuses on whether consolidation of individual actions into a class action is profitable; the second adds an element of venue by asking not only whether consolidation is preferable to individual actions but also whether consolidation makes sense in that district." *Id.* Plaintiff

1    has shown that the first element is met because the Class Members are not aware of their

2    rights, none have brought a separate case, and most of their claims are not large enough to

3    justify twenty-two individual lawsuits. As such, Plaintiff will focus on the second prong.

4         "Courts have found that class actions in a particular forum are particularly

5    appropriate when that court has already made several preliminary rulings, when a

6    particular forum is more geographically convenient for the parties, when other similar

7    actions have been consolidated before the court, or, for example, when the defendant is

8    located in the forum state." *Id.* (citing cases). The majority of these factors weigh in favor

9    of finding this forum preferable.

10        Here, the Court has made several preliminary rulings. It granted a motion to stay

11   pending decision in the *Franklin* matter (Dkt. 8), lifted the stay (Dkt. 10), set a Rule 16

12   scheduling conference (Dkt. 11), continued the Rule 16 scheduling conference several

13   times (Dkts. 14, 16, 18, 20), issued the Rule 16 scheduling order (Dkt. 25), granted orders

14   amending the schedule (Dkts. 33, 39), and entered a protective order (Dkt. 44). This

15   forum is also geographically convenient for the parties. Loughran is a resident of Phoenix,

16   Arizona and most of the Class Members live in Maricopa County. And while MIC's

17   headquarters are not located in Arizona, it is licensed to sell insurance in Arizona, all of

18   the policies at issue were sold in Arizona, and Arizona law applies to Plaintiff's claims.

19   *See Winkler v. DTE, Inc.*, 205 F.R.D. 235, 245 (D. Ariz. 2001) (finding District of

20   Arizona the desirable forum when the cars were all purchased in Scottsdale, Arizona, the

21   witnesses and evidence is in Arizona, and "Arizona law applies to the state law claims

22   asserted by the Plaintiffs"). Last, there are at least ten cases pending before the District of

23   Arizona, related to these same issues but brought against different insurance companies.[12]

24   Two of these actions are pending before this Court, with the remainder pending before

25   other judges in the District, and several of the cases have been certified as a settlement

26

27

---

[12] Note 2, *supra.*

MOTION FOR PRELIMINARY APPROVAL

class.[13] *See Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-CV-00400BR, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009) (finding predominance where "all pending litigation arising from the [incident] is apparently before this court, consisting of the instant consolidated case and the one other case"). This forum is preferable.

**B.    The proposed settlement should be preliminarily approved.**

Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement of class action claims. Preliminary approval is appropriate "where the proposed settlement does not disclose grounds to doubt its fairness and lacks 'obvious deficiencies.'" *Zwicky*, 343 F.R.D. at 119–20 (citations omitted). In determining whether a settlement is fair, reasonable, and adequate at the preliminary approval phase, "courts need only evaluate whether the proposed settlement (1) appears to be the product of serious, informed, non-collusive negotiations, (2) has no obvious deficiency, (3) does not improperly grant preferential treatment to class representatives or segments of the class and (4) falls within the range of possible approval." *Id.* at 119 (cleaned up). Each of these factors weighs in favor of approving the settlement.

**1.    The settlement is the result of arm's-length negotiations.**

Weighing in favor of preliminary approval, the settlement arises out of informed, arm's length negotiations among counsel for the parties. The parties reached agreement after Class Counsel obtained a ruling from the Arizona Supreme Court in *Franklin* that established that insurance companies must stack UM/UIM coverage where an insurer did not provide the required notice to select coverage. As the Arizona Supreme Court has decided some of the key legal issues in the case, the only outstanding factual issues in this case are whether MIC provided the required notice under A.R.S. § 20-259.01(H) and, if not, whether MIC's insureds were paid for stacked coverage. Rather than litigate further, MIC and Plaintiff engaged in multiple mediations with the Michael N. Ungar—a mediator

---

[13] *Id.* The District Court has certified settlement classes in the following cases: *Dale v. Travelers Prop. Cas. Ins. Co.*, Case No. CV-22-1659-PHX-SPL (D. Ariz); *Caballero v. Economy Preferred Insurance Co.*, Case No. CV-22-02023-PHX-MTL (D. Ariz.); and *Miller v. Trumbull Insurance Company*, Case No. CV-22-010505-PHX-JJT (D. Ariz.).

well versed in insurance claims handling and class action issues—while the mediations did not result in settlement, the parties ultimately came to an agreement that benefits both sides.

"Particularly with settlements reached prior to class certification, enough information must exist for the Court to assess 'the strengths and weaknesses of the parties' claims and defenses ... and consider how class members will benefit from settlement' to determine if it is fair and adequate. *Zwicky*, 343 F.R.D. at 120 (citations omitted). "In considering a proposed settlement, a court therefore bears an obligation to first evaluate the scope and effectiveness of the investigation plaintiff's counsel conducted prior to reaching an agreement." *Id.* Even though this case was settled before class certification, the Court can assess the strengths and weaknesses of Plaintiff's claims and MIC's defenses based on the decision in *Franklin* and the extensive discovery and analysis conducted in anticipation of briefing class certification.

Relying on the ruling in *Franklin*, Plaintiff contends he has a strong case for breach of contract by establishing that MIC did not provide the required notice under A.R.S. § 20-259.01(H) and that MIC did not stack coverage. Nothing in Loughran's policy advises him of his right to select coverage, and he did not receive a separate letter from MIC. While MIC denies liability and disputes Plaintiff's interpretation of *Franklin*, the Arizona Supreme Court held that insurers "seeking to prevent insureds from stacking UIM coverages under a single, multi-vehicle policy must employ subsection (H)'s sole prescribed method for limiting stacking." *Franklin*, 532 P.3d at 1146. The court went to describe what is required: "[I]nsurers must (1) expressly and plainly limit stacking in the policy and (2) satisfy the notice requirement informing the insured of their right to select one policy or coverage either in the policy itself or in writing to the insured within thirty days after the insurer is notified of the accident." *Id.* at 1148 (citations omitted). In settling this case, MIC identified all Settlement Class Members who made a claim for UM/UIM benefits and exhausted the single (unstacked) policy limit under a multi-vehicle policy. Based on MIC's policy language and claim records, Plaintiff contends he could show, if

MOTION FOR PRELIMINARY APPROVAL

1  the case proceeded, that Class Members did not have the required policy language and did

2  not receive notice. Additionally, Plaintiff Loughran can show that MIC did not stack his

3  coverage. Again, MIC disputes there is any liability here, either to Plaintiff or any

4  member of the class, but it agrees it identified all Settlement Class Members who did not

5  receive stacked coverage.

6       Based on this information, the Court should find that the settlement is based on an

7  informed, arm's-length negotiation.

8      **2.**     **The settlement has no obvious deficiencies.**

9       There are no obvious deficiencies in the proposed settlement. The Ninth Circuit has

10  pointed to three factors as troubling signs of a potential disregard for the class's interests

11  during the course of negotiating and pre-certification settlement: (1) when class "counsel

12  receive a disproportionate distribution of the settlement, or when the class receives no

13  monetary distribution but class counsel are amply rewarded;" (2) "when the parties

14  negotiate a 'clear sailing' arrangement that provides for the payment of attorneys' fees

15  separate and apart from class funds;" and (3) when the parties arrange for fees not

16  awarded to class counsel to revert to the defendants rather than the class. *In re Bluetooth*

17  *Headset Prods. Liability Litig.* 654 F.3d 935, 947 (9th Cir. 2011); *see also Zwicky*, 343

18  F.R.D. at 121 (same). None of those deficiencies are present here.

19       Here, the Settlement Class will receive a majority of the Settlement Fund. In fact,

20  each of the Settlement Class Members will receive a significant recovery. There is no

21  clear sailing provision. Rather, reasonable attorneys' fees will be awarded out of the

22  Settlement Fund as determined by the Court. If a Class Member does not claim his or her

23  funds—which is unlikely given the number of Settlement Class Members and the size of

24  the recoveries—MIC may elect to have those funds returned and treat that Class Member

25  as an opt out, which would not bind him or her to the Settlement. Settlement Agreement ¶

26  38. None of the *Bluetooth* deficiencies are present in this case.

27

28

MOTION FOR PRELIMINARY APPROVAL

### 3. The proposed settlement does not grant preferential treatment to Plaintiff or segments of the Settlement Class.

There is no preferential treatment for Loughran in the proposed settlement. Plaintiff Loughran will request a modest incentive fee of $10,000, which is the standard incentive fee award. *Sonoma Sol LLLP*, 2021 WL 5238711, at *6. "To assess whether an incentive payment is excessive, district courts balance 'the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment.'" *Zwicky*, 343 F.R.D. at 123 (quoting *Staton*, 327 F.3d at 977). Here, there is only one incentive award, the proposed incentive award constitutes approximately 1.11% of the Settlement Fund. The settlement does not give Plaintiff preferential treatment; in fact, Plaintiff sacrificed what he could have recovered in individual litigation to ensure the entire class was compensated.

There also is no preferential treatment for segments of the Settlement Class. Each Settlement Class Member's damages will be based entirely on each Class Member's possible damages and the amount of available UM/UIM coverage they had. While the damages among Settlement Class Members will vary, that variation will be due to the varying UM/UIM coverage and possible damages. The proposed settlement is fair to the Settlement Class.

### 4. The settlement falls within the range of possible approval.

To determine whether a settlement 'falls within the range of possible approval,' courts focus on 'substantive fairness and adequacy' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Zwicky*, 343 F.R.D. at 124 (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). "The Ninth Circuit in particular 'puts a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and has never prescribed a particular formula by which that outcome must be tested." *B.K. by next friend Tinsley v. Faust*, No. CV-15-00185-PHX-ROS, 2020 WL 6048315, at *2 (D. Ariz. Oct. 13, 2020) (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). "Estimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of

33

1   litigating the case, and the expected delay in recovery (often measured in years)." *In re*

2   *Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 322 (N.D. Cal. 2018).

3       In addition to comparing this case to similar settlements and running a specials

4   cross-check, Class Counsel also took into account the nature of the policies and Class

5   relative to the experience gained in evaluating other cases based on this theory. Carey

6   Decl. ¶¶ 21–24, 32. Counsel has seen various demographics, market niches, and loss

7   estimates, and used that insight to help value these claims. *Id.*

8       The settlement amount of $900,000 compares favorably with the projected value of

9   Class Members' UM/UIM claims as calculated under the stacked limit instead of the

10  single limit. The settlement was the product of an arms-length, non-collusive negotiation.

11  *Supra* section VI.B.1. And given the risks and time associated with continued litigation—

12  including Defendant's denial of all material allegations of this case and commitment to

13  vigorous litigation on the merits and as to class certification—had the parties not settled,

14  the possibility that the Settlement Class could recover less or nothing at trial, and the

15  possibility of an appeal if they do prevail, $900,000 represents a fair, reasonable, and

16  adequate settlement.

17      **5.    The experience and views of counsel weigh in favor of preliminary
              approval.**

18

19      Class Counsel's judgment that this settlement is fair and reasonable is entitled to

20  significant weight. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523,

21  528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who

22  are most closely acquainted with the facts of the underlying litigation.") (citation omitted).

23  This is particularly true here, where Class Counsel are not only experienced class

24  attorneys but experts in insurance cases and insurance class actions. *See Reid v. I.C. Sys.*

25  *Inc.*, No. CV-12-02661-PHX-ROS, 2018 WL 11352039, at *3 (D. Ariz. July 27, 2018)

26  (giving counsel's recommendations a "presumption of reasonableness," where class

27  counsel had sufficient expertise in class actions and consumer protection cases), *aff'd*, 795

28  F. App'x 509 (9th Cir. 2019); *see also* Hagens Berman Firm Resume (showing class and

34

011064-28/3188697 V1

insurance experience). Class Counsel's experience and recommendation support a finding that the settlement is fair, reasonable, and adequate.

**C.    The Proposed Class Notice and Plan for Dissemination Comply with Rule 23(e)**

Rule 23(e)(1) requires that a court approving a class action settlement must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). In addition, for a Rule 23(b)(3) class, the court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). A class action settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citations omitted); *see also* Fed. R. Civ. P. 23(c)(2)(B) (describing specific information to be included in the notice).

The proposed plan for disseminating notice provides direct notice to the Settlement Class as required by Rule 23(e)(1)(B). Using the Class Members' contact information from Defendants, notice will be sent via USPS first class mail. Settlement Agreement ¶ 42. If no valid address is available, notice will alternatively be sent by email to Class Members if mailing addresses are not available. *Id.* Given the size and variation among the Class Member's recoveries, Class Counsel also requests approval from the Court to contact the Settlement Class Members directly. *Id.* Once notice is sent to a prospective class member an "attorney-client relationship exist[s] for the purpose of aiding prospective class members in deciding whether or not to join in the class action." *Kleiner v. First Nat. Bank of Atlanta*, 102 F.R.D. 754, 769 (N.D. Ga. 1983), *aff'd in part, vacated in part on other grounds*, 751 F.2d 1193 (11th Cir. 1985). Class Counsel fulfills their responsibility "by providing neutral, objective information and advice" about whether to join or exclude themselves from the class action. *Id.* at 769 n.20. Because this is a small Settlement Class and most of the recoveries will be large, Class Counsel may contact

35

MOTION FOR PRELIMINARY APPROVAL

Settlement Class Members to answer any questions about the settlement, to provide neutral information about whether to stay in the Settlement Class, and to provide Settlement Class Members with any requested documents (such as the Complaint, Answer, Motion for Preliminary Approval, or Motion for Attorneys' fees). In contacting the Settlement Class Members, Class Counsel have consulted with ethics counsel about their ethical duties and to ensure compliance with all ethical rules, including Rule 4.2 of the Arizona Rules of Professional Conduct, Communications with Person Represented by Counsel, as some of the Settlement Class Members were previously represented by counsel in relation their individual claims.

The proposed Notice contains all the information required by Rule 23(c)(2)(B) to the Settlement Class, in language that is plain and easy to understand. *See generally* Ex. A, Proposed Notice. The proposed Notice features a prominent headline and is identified as a Notice from the District Court. *Id.* at 1. The Notice includes information about the lawsuit and settlement, including Plaintiff's claims, the definition of the Settlement Class, the amount of the Settlement, how much each Settlement Class Member will receive from the settlement, the right to object, the right to request exclusion, how to attend the final fairness hearing, and contact information for Class Counsel to request additional information. *Id.* ¶¶ 1, 5, 7–10, 12–17, 20–22. The Notice alerts recipients that the Notice is an important document authorized by a court and that the content may affect them, thereby supplying reasons to read the Notice, or contact Class Counsel for additional information. *Id.* at 1 & ¶ 17.

Finally, Class Counsel proposes that the deadline for Settlement Class Members to request exclusion from the Settlement Class or object to the settlement be set 60 days after the start of the direct Notice Campaign ("Notice Start Date"), which also follows the recommendations of the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide.

MOTION FOR PRELIMINARY APPROVAL

These notice provisions meet the requirements of Rule 23. They will allow the Settlement Class a full and fair opportunity to review and respond to the proposed settlement.

**D.    Proposed Schedule for Dissemination of Notice and Final Approval**

Plaintiff proposes the following schedule for the dissemination of class notice and final approval:

| Event | Proposed Deadline |
|---|---|
| Settlement Class Data provided to Epiq | No later than 30 days after entry of preliminary approval order |
| Notice Start Date | No later than 60 days after entry of preliminary approval order |
| Last day for motion for attorneys' fees, costs, expenses, and service awards | No later than 30 days after the Notice Start Date |
| Last day for objections to settlement | Filed or received 60 days after the Notice Start Date |
| Last day for requests for exclusion from the Settlement Class | Filed or received 60 days after the Notice Start Date |
| Last day to file motion in support of final approval of settlement | 14 days after objection/exclusion deadline |
| Fairness Hearing | 30 days after motion for final approval is filed, unless otherwise ordered by the Court |

## V.    CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court preliminarily approve the Settlement with MIC certify the Settlement Class, appoint Plaintiff Loughran as Settlement Class Representative, appoint Hagens Berman as Class Counsel, and direct notice in the form and manner, and on the schedule, proposed here.

MOTION FOR PRELIMINARY APPROVAL

1    Dated: April 21, 2025          Respectfully submitted by,

2                                    HAGENS BERMAN SOBOL SHAPIRO LLP

3
                                     By: *s/ Robert. B. Carey*
4                                        Robert B. Carey
                                     John M. DeStefano
5                                    E. Tory Beardsley

6
                                     THE SLAVICEK LAW FIRM
7                                    Brett L. Slavicek
                                     James Fucetola
8                                    Justin Henry

9
                                     *Attorneys for Plaintiff*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL

011064-28/3188697 V1